COMMONWEALTH vs. ARTHUR J. MORROW.

Middlesex.   November 6, 1972. — May 11, 1973.

Present: TAURO, C.J., REARDON, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Practice, Criminal,* Plea, Appeal. *Rape. Accessory. Constitutional Law,* Cruel and unusual punishment.

There was no error in the denial of a motion to withdraw pleas of guilty to indictments which were accepted following a searching inquiry of the defendant indicating that the pleas were understandingly and voluntarily made; it was not crucial that, with respect to the subjects of waivers by the defendant of the right to a jury trial, of the privilege against self-incrimination, and of the right of confrontation, only waiver of jury trial was the subject of specific questions, or that most of the questions to the defendant were put by his counsel instead of by the judge. [603–605]

Upon indictments charging rape and four other serious offences committed on the same occasion, statements to the defendant prior to his pleas of guilty that not only could the court give him the maximum penalty of life imprisonment but also a second life sentence on and after the first sentence adequately informed the defendant of the consequences of his pleas; the pleas were not defective in that the defendant had not been advised that he was subject to G. L. c. 123A, concerning sexually dangerous persons. [605–606]

Statements to the defendant by his counsel that if he pleaded guilty to indictments he would receive lighter sentences did not invalidate his guilty pleas where no promises were made and he was advised that neither his counsel's advice nor the prosecutor's recommendations were binding on the judge. [606–607]

Pleas of guilty to indictments charging serious crimes, made by a defendant in consultation with his father and his counsel and after being told that the ultimate decision was his, were not invalid although the defendant was only sixteen years of age. [607]

Where a defendant admitted to a judge hearing his offer to plead guilty to an indictment charging rape that the defendant and three friends had entered an apartment building and assaulted and robbed therein, that one of the friends, but not the defendant, had raped a woman while the defendant was present, and that he had thrown an object which struck the victim, there was a sound factual basis for a conclusion that the defendant was guilty of rape as a principal and as an accessory before the fact; such conclusion supported acceptance of the plea as voluntarily and intelligently made. [607–609]

No compelling considerations of justice impelled this court to consider a constitutional question first raised by a defendant sixteen years of age upon appeals from convictions on indictments re-

turned following dismissal of juvenile complaints and issuance of criminal complaints. [609–610]

The possible penalties established by the Legislature for armed burglary, rape, armed assault in a dwelling house, armed robbery and confining for purposes of a stealing were not so disproportionate to the offences as to constitute cruel and unusual punishment [610–611]; this court on the record could not ascertain that a defendant sixteen years of age and coming from a culturally deprived setting who pleaded guilty to indictments charging such offences was deprived of any constitutional rights by the sentences imposed, and the judgments on the indictments were affirmed; however, as the defendant had not appealed to the Appellate Division of the Superior Court, he was allowed sixty days to file a motion for a late appeal of his sentences, which such court could allow in its discretion [611–612).

FIVE INDICTMENTS found and returned in the Superior Court on April 14, 1969.

Motions were heard by *Roy*, J.

*Sumner D. Goldberg* for the defendant.

*Barbara A. H. Smith*, Legal Assistant to the District Attorney, for the Commonwealth.

HENNESSEY, J. The defendant appeals under G. L. c. 278, §§ 33A–33G, from convictions under indictments charging him with armed burglary, rape, armed assault in a dwelling house, armed robbery and confining for purposes of stealing.

At the age of sixteen, the defendant was arrested and brought before the juvenile session of the District Court for the conduct which ultimately resulted in the indictments described above. He was represented by counsel at this session. The judge dismissed the delinquency complaint (G. L. c. 119, § 61) and caused criminal complaints to be issued in accordance with G. L. c. 119, § 75. After indictments were returned, the defendant was arraigned in the Superior Court where he was represented by appointed counsel. He pleaded not guilty. Subsequently, counsel withdrew by leave of court, and the court appointed Mr. Robert A. Barton in his stead. After a jury were empanelled, the defendant changed his pleas to guilty. Mr. Barton and the judge asked the defendant a number of questions concerning his pleas,

after which the judge accepted pleas of guilty to all indictments. The defendant received the following sentences to be served concurrently at the Massachusetts Correctional Institution at Walpole: for armed burglary, fifteen to forty years; for rape, fifteen to twenty years; for armed assault in a dwelling house, fifteen to forty years; for armed robbery, thirty to forty years; for confining for purposes of stealing, thirty to forty years.

The defendant filed a motion for modification of the sentences and a motion to revoke the sentences and withdraw his pleas of guilty, but after an evidentiary hearing,[1] both motions were denied. The defendant appealed and assigns as error the denial of these motions. The judge filed findings of fact as to the denial of the motion to withdraw his pleas of guilty.

1. We consider first the denial of the motion to revoke sentences and withdraw pleas of guilty. There was no error.

The record of a guilty plea entered subsequent to the decision in *Boykin* v. *Alabama*, 395 U. S. 238, decided on June 2, 1969,[2] is required to show affirmatively that a defendant who pleads guilty entered his plea understandingly and voluntarily. See *Brady* v. *United States*, 397 U. S. 742, 747–748, n. 4; *Huot* v. *Commonwealth*, *ante*, 91, 99. The *Boykin* case indicated that when a plea of guilty is entered in a State criminal trial, three Federal constitutional rights are waived: namely, the privilege against self-incrimination, the right to trial by jury and the right to confront one's accusers. 395 U. S. at 243. Although the inquiry directed to the defendant in this case, before his pleas were accepted, was a searching one, only one of the three waived constitutional rights (waiver of jury trial) was the subject

---

[1] Note that a plea of guilty within the Federal system is open to collateral attack and a defendant is entitled to a hearing (presumably evidentiary) on his motion to vacate sentence, even though Rule 11 of the Federal Rules of Criminal Procedure, 18 U. S. C. Appendix (1970), has been satisfied. *Fontaine* v. *United States*, 411 U.S. 213.

[2] The *Boykin* case applies here because the pleas of guilty were accepted on June 23, 1969.

of a specific question or questions. No rule of the Superior Court required inquiries in these three areas. Compare Rule 11 of the Federal Rules of Criminal Procedure; Rule 4 of the Initial Rules of Criminal Procedure for the District Courts of Massachusetts (1971).

We conclude that the entire dialogue with the defendant was sufficient to satisfy the Commonwealth's burden of showing that the guilty pleas were understandingly and voluntarily made.[3] The *Boykin* case does not

---

[3] In open court, defence counsel first summarized the details of the crimes charged. Thereafter defence counsel propounded the following questions, all of which were answered by the defendant in words consistent with understanding and voluntariness:

1. "Did you in fact commit the acts as I have stated?" ·

2. "Do you wish to plead guilty to these indictments which relate to the facts that I have just told you?"

3. "Do you know that you have an absolute right to a trial to ascertain your innocence or guilt, with or without a jury; and that by pleading guilty, you waive such right?"

4. "Do you understand that by pleading guilty, you admit the facts as I have stated them to 'you?"

5. "Arthur, after you mentioned to me that you wanted to change your plea, did you have an opportunity to discuss this with a member of your family in the courtroom today?"

6. "Who was that member of your family?"

7. "Was he present while you and I had a discussion relative to any change in plea?"

8. "Do you plead guilty willingly, freely and voluntar[il]y?"

9. "Do you understand that by pleading guilty, you leave it to this Court to impose such sentence that the law deems fit in accordance with the law?"

10. "Do you understand that the maximum penalty for the offenses for which you have been indicted . . . [is] life imprisonment?"

11. "And do you understand that the Court could not only give you one life sentence but give you a life sentence on and after the other life sentence? Do you understand that?"

12. "Have any promises been made to you which induced you to plead guilty?"

13. "Has anyone forced you to plead guilty?"

14. "Have any threats been made to you which induced you to plead guilty?"

15. "Have you discussed this matter fully with me as your attorney?"

16. "Are you confused in any way by the questions I have asked you?"

Thereafter the judge inquired as follows:

1. "Are you satisfied that your lawyer fairly and fully represented you?"

2. "Are you satisfied that he gave you good legal advi[c]e?"

3. "Do you also understand that no matter what indications you

require that the judge expressly enumerate in detail
the three rights waived. *United States* v. *Webb,* 433 F.
2d 400, 403 (1st Cir.). *Arbuckle* v. *Turner,* 400 F. 2d
586, 588–589 (10th Cir.). *United States* v. *Frontero,*
452 F. 2d 406, 415 (5th Cir.). *United States* v. *Tabory,*
462 F. 2d 352, 353 (4th Cir.). Nor is it crucial that most
of the questions were asked by the defendant's attorney,
rather than the judge. Compare Rule 11 of the Fed-
eral Rules of Criminal Procedure. However, the spon-
taneity and flexibility of the dialogue, which supports
a conclusion of voluntariness, can best be achieved where
the judge asks the questions. This also avoids even the
appearance that the colloquy is but a prearranged
script. Therefore, we think it would be better practice
for the judge to ask the questions, just as we think it
would be better practice to include specific inquiry as
to the defendant's understanding waiver of the three
constitutional rights. See the *Huot* case at 247.

In reaching our conclusion that there is here an
affirmative showing of voluntary and intelligent pleas
of guilty, we reject as unconvincing the several following
arguments of the defendant which are addressed to the
particular circumstances of this case.

The defendant argues that his pleas of guilty are de-
fective since he was not advised that his pleas could
subject him to the operation of G. L. c. 123A, which
concerns the care, treatment and rehabilitation of sex-
ually dangerous persons. In establishing that a guilty
plea is offered intelligently and voluntarily by the de-
fendant, the judge must ensure that the plea has been
made with an understanding of the nature of the charge
and the consequences of the plea. *Brady* v. *United*
States, 397 U. S. 742, 748. *Huot* v. *Commonwealth, ante,*
91, 100–101. We conclude that the defendant was ade-
quately informed of the consequences of his plea. He

may have gotten from your lawyer that there might be some recom-
mendations as to what should be done with you by the District Attor-
ney, that is not binding on the Court? It is fully within my discretion
to give you what sentence in my own discretion that I deem proper?"

was convicted of the crime of rape and was therefore subject to disposition under G. L. c. 123A, § 4, in the discretion of the judge. Although the judge chose not to invoke § 4 in this case, the defendant could possibly be subjected to similar provisions under G. L. c. 123A, § 6, as a prisoner. The record reveals that he was told before his pleas were offered that the maximum penalty for the offences for which he was indicted was life imprisonment and that the court could give him, not only one life sentence, but a second life sentence on and after the first sentence. Being subject to G. L. c. 123A, is but one of many contingent consequences of being confined. Moreover, proceedings under § 6 of that statute are subject to the same safeguards as those under § 4. *Commonwealth*, v. *Bladsa,* 362 Mass. 539, 541.

The defendant's reliance on *Durant* v. *United States,* 410 F. 2d 689 (1st Cir.), is misplaced. The court in that case held that a defendant was entitled to know that, by statute, one convicted and sentenced for certain narcotics violations was ineligible for parole. That case interprets "consequences of the plea" within the framework of Rule 11 of the Federal Rules of Criminal Procedure in the Federal courts. Such a rule is not applicable to State court proceedings. In any event, the case is factually distinguishable.

The defendant further contends that his pleas of guilty are defective since he was prompted to plead only after his counsel told him that if he did so, he would receive a lighter sentence. He also seems to argue that one who is sixteen years old is incapable of intelligently and voluntarily entering a plea of guilty. Neither argument is persuasive.

A plea of guilty is usually made in anticipation of a lighter sentence. A guilty plea, however, is not "compelled and invalid under the Fifth Amendment whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquit-

tal to conviction and a higher penalty authorized by law for the crime charged." *Brady* v. *United States,* 397 U. S. 742, 751.

A guilty plea to be intelligently made does not require that all advice offered by the defendant's counsel withstand retrospective examination. *McMann* v. *Richardson,* 397 U. S. 759, 769–771. *Parker* v. *North Carolina,* 397 U. S. 790, 797–798. Furthermore, the trial judge's finding that no promises were made to the defendant is clearly supported by the record. He was advised that neither his lawyer's advice nor the district attorney's recommendations were binding on the judge.

As to the defendant's age, the record shows that his decision to plead guilty was made in consultation with his father and his lawyer. The defendant was told that the ultimate decision to plead guilty was his. There is nothing in the record to indicate that the defendant was incompetent to stand trial. The same standard should be applied to the acceptance of a guilty plea.

The defendant argues that it was error for the judge to accept his plea of guilty to the charge of rape, because the facts before the judge did not indicate that the defendant penetrated the victim. A judge may accept a guilty plea even though there is no separate, express admission by the defendant that he committed the acts claimed to constitute the crime charged in the indictment. Indeed, the fact that a defendant professes innocence does not alone invalidate a guilty plea. *North Carolina* v. *Alford,* 400 U. S. 25, 32–38. *Huot* v. *Commonwealth, ante,* 91, 99. A plea of guilty is an admission of the facts charged and "is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence. . . . When one so pleads he may be held bound." *Kercheval* v. *United States,* 274 U. S. 220, 223–224. *Kuklis* v. *Commonwealth,* 361 Mass. 302, 305. Nevertheless, it is desirable that a factual basis for the guilty plea be shown, by specific admissions of the de-

fendant or other factual presentation made before the plea is accepted by the judge.[4] This showing can be of significant assistance to the judge in the performance of his duty to ensure that the plea is voluntarily and intelligently made. See *Boykin* v. *Alabama, supra,* at 242–244. Accordingly, we have examined the facts presented before the judge in this case and we conclude that a factual basis for the guilty plea to the rape indictment was shown.

After the defendant offered his guilty pleas, and before the judge accepted them, the defendant was asked certain questions in open court by his attorney. In answer to the questions, the defendant admitted committing the following acts. He and three friends went to an apartment building in Cambridge, went inside, tied up two men in the basement, took items of personal property from them and hit each of them over the head with a beer bottle. Then all four went upstairs, some with weapons, and threatened other people in the building. One of the four, but not the defendant, raped a woman while the defendant was present. Meanwhile, money and other items were taken from a man. As the group left, the defendant threw an iron or toaster at the rape victim which struck her in the face.

For an accomplice to be found guilty of rape, penetration by him is not required. Thus, a woman (*People* v. *Haywood,* 131 Cal. App. 2d 259; *People* v. *Trumbley,* 252 Ill. 29), or the victim's husband (*People* v. *Chapman,* 62 Mich. 280; *Bohanon* v. *State,* 289 P. 2d 400 [Crim. Ct. App. Okla.]), neither of whom could be guilty of rape acting alone, can be guilty of rape as an accomplice. The defendant could have been found guilty on the rape indictment either as a principal or an accessory before the fact. G. L. c. 274, § 2, as appearing in St. 1968,

---

[4] Compare Rule 11 of the Federal Rules of Criminal Procedure where it is said: "The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea." Compare also Rule 5 of the Initial Rules of Criminal Procedure for the District Courts of Massachusetts (1971).

c. 206, § 1.  *Commonwealth* v. *Perry,* 357 Mass. 149, 151.
One who is present during the commission of a crime, as-
sents to it, and by arrangement is in a situation where he
might render some aid to the perpetrator, is a principal.
*Commonwealth* v. *Knapp,* 9 Pick. 495, 517.  *Common-
wealth* v. *Connolly,* 356 Mass. 617, 629.  "For the pres-
ence of the abettor under such circumstances, must en-
courage and embolden the perpetrator to do the deed, by
giving him hopes of immediate assistance; and this would
in law be considered as actually aiding and abetting him,
although no further assistance should be given."  9 Pick.
at 518.

One present, but not acting, may also be an accessory
before the fact.  *Commonwealth* v. *DiStasio,* 297 Mass.
347, 361.  The offence of being an accessory before the
fact involves counselling, hiring or otherwise procuring.
G. L. c. 274, § 2.  This language means something more
than mere acquiescence but does not require physical
participation, if there is association with the criminal
venture and any significant participation in it.  *Com-
monwealth* v. *French,* 357 Mass. 356, 391.

Whether one is a principal or an accessory before the
fact makes little difference, since he must be indicted,
tried and punished as a principal.  G. L. c. 274, § 2.
*Commonwealth* v. *Benjamin,* 358 Mass. 672, 680.

We are of opinion that the facts would have war-
ranted findings that the defendant stood watch, was
ready to render aid if needed, did in fact render aid, and
generally encouraged the commission of the offence.
There was a sound factual basis to support a conclusion
that he was guilty of rape as a principal and as an
accessory before the fact.  This in turn supported the
conclusion that his plea of guilty to the rape charge was
voluntary and intelligent.

2. The defendant assigns as error and argues that
he was denied due process of law in violation of the
Fourteenth Amendment to the United States Constitu-
tion by the dismissal of the juvenile complaints and the

issuance of criminal complaints.[5]   The defendant raises this issue for the first time on this appeal.   No exception was taken in the District Court; no motion to dismiss the indictment was filed in the Superior Court.   He raises the issue now after incurring sentences which are displeasing to him.   Under these circumstances nothing is properly brought before us.   *Commonwealth v. Underwood*, 358 Mass. 506, 509.   We may in our discretion review the issue if we determine that justice will be best served by such a review.   *Commonwealth v. Freeman*, 352 Mass. 556, 561–564.   But there are no compelling considerations of justice here which incline us to review this assignment of error.[6]

3. Finally, we consider the denial of the defendant's motion for modification of sentences.   The defendant argues that the sentences imposed upon him were of such length as to constitute cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution and arts. 12 and 26 of the Declaration of Rights of the Constitution of the Commonwealth.

It is clear that punishment may be cruel and unusual not only in its manner but also in its length.   In *Weems v. United States*, 217 U. S. 349, a sentence was held cruel "in its excess of imprisonment," *id.* at 377, and it was said that "punishment for crime should be graduated and proportioned to [the] offense."   *Id.* at 367. Although the Legislature has great latitude in setting the length of punishment (*Guerro* v. *Fitzpatrick*, 436

---

[5] See now the Rules of the District Courts (of Massachusetts) with amendments promulgated April 23, 1973, and effective May 7, 1973, clarifying and improving the procedures for consideration of the dismissal of juvenile complaints.

[6] Compare *Tollett* v. *Henderson*, 411 U. S. 258, 267, which holds that a defendant cannot raise, in a Federal habeas corpus proceeding, independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of a guilty plea.   He may only attack the voluntary and intelligent character of the plea.   For two cases predating this decision, see *Acuna* v. *Baker*, 418 F. 2d 639, 640 (10th Cir.), which held that a subsequent plea of guilty by a juvenile waived the denial of his right to counsel at a waiver hearing.   Contra *Kemplen* v. *Maryland*, 428 F. 2d 169, 174, fn. 11 (4th Cir.).

F. 2d 378 [1st Cir.]), there are undoubtedly constitutional limits beyond which it cannot go. *McDonald* v. *Commonwealth,* 173 Mass. 322, 328. *Commonwealth* v. *Moore,* 359 Mass. 509, 515. See *In re Lynch,* 8 Cal. 3d 400, and cases cited therein. The crimes to which the defendant pleaded guilty, which carry sentences from any term of years[7] to life imprisonment, are among the most serious crimes in our jurisprudence. Hence, it cannot be said that the terms established by the Legislature are disproportionate to the offences.

The defendant also argues that there are mitigating circumstances present which, from the sentences imposed, indicate that the judge's imposition of otherwise lawful sentences on him constitutes cruel and unusual punishment. He points to the fact that the practical effect of a minimum thirty year term where parole eligibility does not occur until he has served twenty years (G. L. c. 127, § 133, as amended) is more harsh than certain life sentences, where parole eligibility occurs after the fifteenth year of service. G. L. c. 127, § 133A, as amended. He emphasizes that he was sixteen years old at the time the offences were committed and that he came from a culturally deprived setting. He argues that the judge erred in failing to consider rehabilitation and an incentive for correction. Although the judge specifically mentioned but one element in imposing sentence — the isolation of the defendant from society — we cannot and should not assume that he failed to consider all relevant factors. The judge had before him probation records and records of prior offences, if any, of the defendant and we do not. Moreover, the judge based his findings in part on the full trial of a codefendant. We did not hear this evidence. Therefore, we conclude that the defendant fails to make out a case of constitutional deprivation.

It appears that the defendant did not appeal the sen-

---

[7] Armed burglary has a ten year minimum. G. L. c. 266, § 14.

tences to the Appellate Division of the Superior Court. G. L. c. 278, §§ 28A and 28B, as appearing in St. 1968, c. 666, §§ 1, 2. Perhaps he refrained from doing so because he was aware that the Appellate Division has the power to increase as well as decrease sentences. *Croteau, petitioner,* 353 Mass. 736. *Walsh* v. *Commonwealth,* 358 Mass. 193. While we cannot make the decision for the defendant as to whether he should appeal, we can provide that a motion for a late appeal of the sentences may be filed. The judgments on all indictments are affirmed. The defendant is allowed sixty days from the entry of this rescript in which to file a motion in the Appellate Division of the Superior Court for a late appeal of his sentences. That motion, if filed, may be allowed in the discretion of the judges of the Appellate Division.

*So ordered.*