Burnes, J.
The defendant, Gerard Monzac, stands indicted on charges of sexually assaulting his stepdaughter. On or about March 11, 1997, the defendant was before the court preparing to enter a plea of guilty to the aforementioned charges. Based on the defendant’s behavior and counsel’s inability to communicate effectively with the defendant at that time, the court sua sponte raised the issue of the defendant’s competence to stand trial. The defendant was evaluated by Dr. Jeffrey Minor, Ph.D., and in the opinion of Dr. Minor, on that day, the defendant was not competent to stand trial or enter a plea. The Honorable James D. McDaniel Jr. ordered the defendant committed to the Erich Lindemann Mental Health Center for twenty days pursuant to M.G.L.c. 123, §15(a). On May 27 and June 30, 1997, this court conducted an evidentiary hearing on the issue of the defendant’s competence to stand trial. For the following reasons, and subject to the following conditions, I rule that the defendant is COMPETENT to stand trial.
FINDINGS OF FACT
The court heard testimony from eight witnesses: Dr. Marcel Fajnzylber, Ed.D., Dr. Nancy Gregg, Ph.D., Dr. Jeffrey Minor, Ph.D., Dr. Don Condie, Ph.D., Detective Barbara Salley, Ms. Yvonne Rowe, Pastor Berris Cox and the defendant.[1] The court has also reviewed the doctors’ written reports concerning the mental status of the defendant. Based on the credible evidence and the reasonable inferences to be drawn therefrom, I make the following findings of fact:
The defendant is a thirty-seven year old male who was born on Nevis in the British Virgin Islands. English is his first language. The defendant attended school until the sixth or seventh grade. The defendant has lived in the United States for approximately ten years and currently resides in Roxbury, Massachusetts. For approximately six years, the defendant has been married to Marcia Monzac with whom he has two daughters, Geraldine and Brittany Monzac. The defendant has a son, Gregoiy, from another relationship. Approximately six years ago, Mr. Monzac made several trips alone to Tortola to retrieve his son Gregoiy whom he believed was not being properly cared for. Marcia Monzac has a daughter from another relationship, Shelly Ann Gayle, who is the alleged victim in this case. Marcia Monzac and the defendant have been estranged for the past two years, although Mr. Monzac continues to provide financially for his wife and children.
The defendant has been gainfully employed during his stay in the United States. The defendant worked for approximately five years as a parking lot attendant in the Longwood Medical area and has worked for AM-PM Cleaning Corporation in Waltham for approximately the last five years. Mr. Monzac proved to be a reliable and responsible employee. Mr. Monzac possesses a Massachusetts drivers’ license and usually drives to work.
The defendant has a histoiy of alcoholism but has been sober for the last year. The defendant suffered two serious head traumas in the past. The defendant attended family gatherings, and sometimes participated in conversations in which he understood those around him and was readily understood by them.
Pastor Berris Cox, a longtime personal friend of the defendant sometimes has trouble communicating with the defendant. Pastor Cox has taught the defendant scriptures and although it takes time to teach the defendant certain things, he eventually understands.
In September of 1995, Shelly Ann disclosed to family members that the defendant had been having sexual intercourse with her since she was a child. Shortly after disclosing this information, the family gathered at Pastor Cox’s house to discuss the allegations. The defendant was at the meeting, he listened to the allegations and admitted that he had had sexual relations with Shelly Ann.
On September 25, 1996, the defendant was interviewed by Detective Barbara Salley at the Boston Police Department. Detective Salley read the defendant his Miranda warnings and he seemed to understand them and he chose to speak with the detectives. Detective Salley asked the defendant one question concerning the allegations of sexual misconduct and the defendant responded with a narrative in which he appeared to acknowledge both the sexual contact and the inappropriateness of his behavior. The defendant was arrested at the conclusion of that interview.
On or about March 11, 1997, the defendant, Mr. Monzac, his counsel, Ms. Debra Beard, and Assistant District Attorney David Deakin appeared before the Honorable James D. McDaniel, Jr. for trial on the above-captioned indictments. At that time, the Commonwealth presented the defendant with a plea agree *192 ment wherein the defendant would plead guilty to the charges and the Commonwealth would recommend a sentence of five to seven years. If convicted of the charges, following a trial the defendant would face a possible sentence of twenty years to life. Based upon the circumstances of the case, the defendant’s counsel recommended that the defendant accept the plea bargain. Attorney Beard was frustrated in her efforts to communicate the options available to the defendant and the implications of those options. As a result of her attempts to communicate with the defendant and the defendant’s unwillingness to accept the plea, Justice McDaniel ordered that the defendant be examined by a court appointed psychologist pursuant to M.G.L.c. 123, § 15(a).
Dr. Jeffrey Minor, Ph.D., was called to examine the defendant at that time. Dr. Minor has a Ph.D. in psychology and has been a designated forensic psychologist since 1989. At the time he evaluated the defendant, he had conducted approximately thirty to forty competency evaluations. Dr. Minor conducted the interview for approximately forty-five minutes in a vestibule area near the court room and in a conference room. Dr. Minor attempted to give the defendant the Lamb warnings but felt that the defendant was unable to understand them. Dr. Minor conducted tests to assess the defendant’s ability to recall by listing three items ranging from a concrete object to an abstract idea. Dr. Minor conducted this test two times and each time the defendant was only able to recall the concrete object. Dr. Minor described the defendant as being anxious, although the defendant described himself as nervous. The defendant gave Dr. Minor definitions of a judge, a jury and a trial. Dr. Minor concluded that at that point, the defendant was not competent to stand trial. As a result of Dr. Minor’s conclusion, the defendant was committed to Erich Lindemann Mental Health Center for twenty days pursuant to M.G.L.c. 123, §15(b).
While he was at the Lindemann Center, the defendant was examined by Dr. Nancy Gregg, Ph.D. Dr. Gregg has been a psychologist since 1982 and has been a forensic psychologist since 1990. She is a designated forensic psychologist whose primary job responsibility is to conduct evaluations of criminal competency and responsibility. At the time she evaluated the defendant, Dr. Gregg had conducted several thousand competency and responsibility evaluations. She interviewed the defendant in one hour sessions for a total of approximately five hours. The defendant was interviewed and monitored by several staff members at the facility during his first two weeks. All of his sessions with Dr. Gregg were conducted during his last week at the facility.
Prior to his sessions with Dr. Gregg, another staff member administered a test for non-verbal intelligence on the defendant. The defendant scored approximately 80. The defendant’s score is not considered mentally retarded. The defendant was also given a proverb test in which the defendant was told various proverbs and asked to explain their meaning. The defendant was able to respond to the proverb “Those who live in glass houses should not throw stones.” When asked to explain the proverb, the defendant responded that those who have made mistakes should not point at others. In Dr. Gregg’s opinion, the defendant’s response to this proverb evidences an ability for abstract reasoning.
Prior to conducting her sessions with the defendant, Dr. Gregg gave the defendant his Lamb warnings and Dr. Gregg felt that he understood them. Dr. Gregg questioned the defendant about the charges pending against him and the judicial process. He was guarded in his responses and was defensive on that topic. The defendant was able to convey to Dr. Gregg an understanding of the charges against him. With instruction and repetition from Dr. Gregg, the defendant was able to gain a grasp of the judicial process, including the role of the judge, the attorneys and the jury and he could repeat those concepts to Dr. Gregg several days later. Dr. Gregg also went over the plea colloquy with the defendant and felt he understood the questions. In Dr. Gregg’s opinion the defendant was not parroting that information.
In Dr. Gregg’s opinion, the defendant does not suffer from a major mental illness. Dr. Gregg expects that the defendant has been taken advantage of in the past because of his limited cognitive abilities and that he learned a pattern of non-verbal behavior to withhold information as a means of protecting himself. The defendant uses these tactics to stall so that he can determine what, if anything, to reveal to another individual. Dr. Gregg further opined that the defendant experiences an emotional overload where he basically ceases to process information if a situation is too stressful. It is Dr Gregg’s opinion that the defendant has limited cognitive abilities and an emotional constitution that causes him to shut down in some stressful situations.
Dr. Gregg concluded that the defendant is not mentally retarded, nor does he suffer from any major mental illness. In her opinion, the defendant is competent to stand trial if certain conditions are met to ensure that the defendant has not ceased to process the legal proceedings. Dr. Gregg expects that the defendant will need frequent intermissions in the proceedings in order to regroup and make sure he is continuing to process information. Dr. Gregg believes that it will be very difficult to consult to a rational degree with his attorney at trial, but that it is possible to accomplish that goal.
The defendant was also evaluated by Dr. Marcel Fajn2ylber, Ed.D. Dr. Fajn2ylber has a doctorate in Psychology and is employed at the McLean Hospital. He is not a designated forensic psychologist but has conducted forensic as well as clinical evaluations for *193 approximately four to five years. He averages approximately one forensic evaluation a month. Dr. Fajnzylber gave the defendant the Lamb warnings and the defendant seemed to understand those warnings. Dr. Fajnzylber administered numerous tests of the defendant in an effort to test his non-verbal intelligence. Dr. Fajnzylber’s testing concluded that the defendant had an IQ of approximately 70, which is borderline mentally retarded. Dr. Fajnzylber also conducted ink blot testing during which the defendant reacted with “mechanical perseveration” essentially responding that he saw the same image regardless of the stimulus shown. Dr. Fajnzylber also conducted a test during which he showed the defendant photographs to identify internal and external stresses. He asked the defendant to make up a story that chronologically included descriptions of activities before, during and after the scene in the photograph. The defendant was unable to put events in a time sequence and evidenced a low level of empathy which, in Dr. Fajnzylber’s opinion, reflects a low level of abstract thinking ability. When asked to make three wishes, the defendant responded with three religiously based statements.
In Dr. Fajnzylber’s opinion, the defendant is not mentally retarded and does not suffer from any major mental illness. The defendant is oriented-times-three (i.e., knows who he is; where he is; and, what time it is). The defendant has long term recall ability but his strongest mental skill is immediate recall. He has a diminished capacity to delay gratification or plan ahead. Thus, Dr. Fajnzylber opined that the defendant cannot think in sufficiently abstract terms to make a choice between immediate imprisonment pursuant to a plea bargain and possible permanent incarceration following a trial. In Dr. Fajnzylber’s opinion, the defendant does not have the capacity to consult with counsel to adequately defend himself.
Dr. Don Condie, M.D., is currently associated with Massachusetts General Hospital and is a professor at Harvard Medical School. Dr. Condie is a board certified forensic psychiatrist and has conducted or supervised approximately 45 to 60 competency evaluations. Dr. Condie conducted four sessions with the defendant over the last several months. It is Dr. Condie’s expert opinion that based on Mr. Monzac’s limited ability to understand or explain the roles of the players at trial that the defendant is not competent to stand trial. Dr. Condie testified that the defendant is borderline mentally retarded and that his social functioning in structured settings is reasonably good. However, Dr. Condie believes that although the defendant’s explanations of the charges against him and the roles of the players have gotten better over time they are still very poor and that some of the improvement is a result of parroting the information rather than comprehension.
However, Dr. Condie conceded that the defendant understood Dr. Condie’s role and that the defendant had a partial understanding of the Lamb warnings. The defendant is oriented to time, place and date, he remembers the plea bargain and understands that Ms. Beard is his attorney. The defendant knows that he is in court and that he’s been charged with doing something wrong. He understands that someone will decide whether he is guilty and that he may be punished as a result.
The final witness before the court was the defendant, Gerard Monzac. Mr. Monzac was oriented to time, place and date. He understood that he was in a courtroom and that he was there because Shelly Ann said that he had had sex with her. He remembered the earlier hearing date for the competency determination and Dr. Gregg’s testimony. The defendant knows that people will speak in court. Specifically, the defendant knows that his attorney, Ms. Beard, speaks for him, that the judge and the witnesses also speak in court. He understands that a witness might lie and he has the ability to identify when a falsehood is stated. He understands that someone will make a decision concerning his guilt or innocence and that he may be punished for his actions.
RULINGS OF LAW
The conviction of an incompetent defendant violates due process. Bishop v. United States, 350 U.S. 961 (1956). A criminal defendant can stand trial only if s/he understands the charges against him/her and is able to participate meaningfully in his/her defense. Commonwealth v. Crowley, 393 Mass. 393, 398 (1975). When a defendant’s competence is questioned, the Commonwealth must show by a preponderance of the evidence that the defendant “has sufficient present .ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him.” Id. at 401-02. see also Commonwealth v. Vailes, 360 Mass. 522, 524 (1971), quoting Dusky v. United States, 362 U.S. 402 (1960). In Massachusetts, the same test for competence is used to determine a defendant’s ability to stand trial or enter a guilty plea. Commonwealth v. Morrow, 363 Mass. 601, 607 (1973).
“There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed . ..” Drope v. Missouri, 420 U.S. 162, 180 (1975). In Massachusetts, “[t]he test for competence to stand trial involves a modicum of ‘rational understanding’... a concept flexible enough to accommodate analytically [even] a defendant whose refusal to plead not guilty by reason of insanity is indicative of grievous detachment from reality." Commonwealth v. Blackstone, 19 Mass.App.Ct. 209, 211 (1985).
Mr. Monzac is borderline mentally retarded and has a deficit in his cognitive abilities that is unlikely to change. Mr. Monzac is not suffering from a mental illness that would affect his competency to stand trial. Neither Mr. Monzac’s low IQ nor his history of head *194 trauma or alcoholism prohibit a finding of competence. See Commonwealth v. Prater, 420 Mass. 569 (1995) (defendant with low IQ indicative of borderline retardation and on medication usually prescribed for mental illnesses could communicate with his lawyer, participate in his defense and had a rational and factual grasp of the proceedings). Mr. Monzac has sufficient present ability to consult with counsel and also has a rational as well as factual understanding of the charges and proceedings and is therefore competent to stand trial.
I. Ability to Consult with Counsel
The ability to consult with counsel requires the capacity to work on a cooperative basis with counsel, to communicate relevant information to counsel, to understand counsel’s communications, to evaluate counsel’s advice, and to make decisions regarding the exercise of legal rights. Martin v. Estelle, 546 F.2d 177, 180 (5th Cir.), cert. denied, 431 U.S. 971 (1977). Relevant considerations to the determination of whether the defendant has the ability to assist in his defense include:
whether he is able to recall and relate facts pertaining to his actions and whereabouts at certain times; whether he is able to assist counsel in locating and examining relevant witnesses; whether he is able to maintain a consistent defense; whether he is able to listen to the testimony of witnesses and inform his lawyer of any distortions or misstatements; whether he has the ability to make simple decisions in response to well-explained alternatives; whether, if necessary to defense strategy, he is capable of testifying in his own defense; and to what extent, if any, his mental condition is apt to deteriorate under the stress of trial. State v. Perry, 502 So.2d 543 (La. 1986).
In this case, the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding. Mr. Monzac understands that Ms. Beard is his attorney and that she speaks for him. He understands that he has been charged with rape and that the judge, witnesses and lawyers will speak in court to determine his guilt or innocence. He is not suffering from any memory loss or mental illness that would affect his ability to recall or relate past events to his attorney. He can distinguish between the truth and a lie. He is capable of testifying in his own defense and when presented with simply phrased questions is capable of responding. Although he has exhibited a tendency to stop processing information when confronted with stressful or confrontational situations that condition does not render him incapable of communicating with his attorney. His tendency to stop participating, however, does call for a trial format that provides his counsel sufficient recesses to consult with Mr. Monzac and make sure that he is continuing to process information.
II. Rational and Factual Understanding of the Proceedings
A rational and factual understanding of the proceedings requires the capacity to reach an understanding of the specific charges and defenses, the procedures that will be used to resolve those charges, the roles of the principal participants in the trial and the consequences of a conviction. Martin, 546 F.2d at 180. A mere finding that the defendant is “oriented in time and place and has some recollection of events,” is not sufficient. U.S. v. Hoskie, 950 F.2d 1388, 1392 (9th Cir. 1991) quoting Dusky. See also Harper v. State, 579 N.E.2d 68 (Ind. 1991) (slight retardation/low normal intellect nonetheless deemed competent).
Relevant considerations to the determination of whether a defendant understands the nature of the proceedings include:
whether he understands the nature of the charges and can appreciate their seriousness; whether he understands what defenses are available; whether he can distinguish a guilty plea from a not guilty plea and understand the consequences of each; whether he has an awareness of his legal rights; and whether he understands the range of possible verdicts and the consequences of conviction. Perry, supra.
Mr. Monzac appreciates the nature and the seriousness of the charges brought against him. He knows that he has been charged with raping Shelly Ann and that the trial is for the purpose of determining if he is guilty. He understands that the judge, witnesses and lawyers will speak in the proceedings. He understands that Ms. Beard is his lawyer and that she will speak for him. He understands that a not guilty verdict is better for him and he understands that if he is found guilty he may be punished. He also understands that one of the possible punishments is life in prison. His seemingly irrational act of rejecting the five year plea bargain when faced with a life sentence does not render him incompetent. See Blackstone, supra.
The Commonwealth has satisfied its burden of showing by a preponderance of the evidence that Mr. Monzac has sufficient present ability to consult with his attorney with a reasonable degree of rational understanding and also has a rational and factual understanding of the proceedings against him. Therefore, Mr. Monzac is competent to stand trial.
ORDER
For the aforementioned reasons, I find that the defendant Gerard Monzac is COMPETENT to stand trial on the above-captioned indictments subject to the condition that the court afford his counsel sufficient opportunities during the course of the proceedings to consult with Mr. Monzac and ensure that he has not withdrawn from participating in the proceedings.

 The Commonwealth also called the defendant’s spouse, Ms. Marcia Monzac, as a witness. Ms. Monzac chose not to testify in reliance on the spousal privilege.