NEWS GROUP BOSTON, INC. *vs.* COMMONWEALTH &
others.[1]

Suffolk. March 7, 1991. - March 28, 1991.

Present: LIACOS, C.J., WILKINS, ABRAMS, & NOLAN, JJ.

*Statute*, Retroactive effect. *Constitutional Law*, Ex post facto law, Public
trial, Equal protection of laws. *Due Process of Law*, Juvenile delin-
quency proceeding. *Practice, Criminal*, Public trial, Juvenile delin-
quency proceeding, Transfer hearing.

Statute 1990, c. 267, § 4, amending G. L. c. 119, § 65, effective December
4, 1990, to provide that the public not be excluded from attending a
juvenile court session when a juvenile is charged with delinquency by
reason of murder, was applicable to proceedings based on events that
occurred before the amendment became effective and, as so applied,
was not a constitutionally prohibited ex post facto law. [630-631]
Statute 1990, c. 267, § 4, amending G. L. c. 119, § 65, to provide that the
public not be excluded from attending a juvenile court session when the
juvenile is charged with delinquency by reason of murder, while leaving
in effect, as to other crimes, earlier language requiring that the general
public be excluded from juvenile proceedings, was a rationally based
legislative determination, and did not abridge any due process or equal
protection rights of five accused juveniles. [631-633]

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on February 1, 1991.

The case was heard by *Lynch*, J.

*Robert L. Sheketoff* (*David Duncan* with him) for a
juvenile.

*Juliane Balliro* for a juvenile.

*Daniel C. Mullane*, Assistant District Attorney (*Anne-
marie Relyea-Chew*, Assistant District Attorney, with him)
for the Commonwealth.

---

[1]The Dorchester Division of the District Court Department, which we
have designated a nominal party, and five juveniles.

*Barbara A. Lenk* for the plaintiff.

*Pamela L. Hunt*, Assistant Attorney General, for Dorchester Division of the District Court Department, was present but did not argue.

*William C. Madden*, for a juvenile, was present but did not argue.

*Joan C. Stanley*, for a juvenile, & *William J. Doyle*, for a juvenile, joined in a brief.

WILKINS, J. We deal with the question of the right of the public, including representatives of the press, to attend juvenile court sessions involving a juvenile charged with murder. The issue arises because, by St. 1990, c. 267, § 4, approved on December 4, 1990, and effective forthwith by declaration of the Governor, the Legislature changed the long-standing requirement in G. L. c. 119, § 65 (1988 ed.) (see St. 1931, c. 217) that a judge sitting in a juvenile session "shall exclude the general public from the room, admitting only such persons as may have a direct interest in the case." By the 1990 amendment, the Legislature inserted in § 65, immediately before the language just quoted, the phrase: "except when the child is charged with murder in the first or second degree." Although there is a plausible argument that the amendment leaves § 65 saying nothing about what a judge must or may do about admitting the public to a hearing when a juvenile is charged with delinquency by reason of murder, we conclude that it is reasonably clear that the Legislature intended generally that a judge not exclude the public from such a hearing.

The case is before us because the plaintiff, which publishes the Boston Herald newspaper, relying on the statutory change and not on any constitutional claim, sought and obtained relief under G. L. c. 211, § 3 (1988 ed.), from a single justice of this court. The single justice overruled a determination of a judge sitting in the juvenile session of the Dorchester Division of the District Court Department that the December 4, 1990, statutory amendment to G. L. c. 119, § 65, did not apply to these juveniles who were arraigned on November 20, 1990, with respect to a murder that occurred

on October 31, 1990. The five juveniles who are charged with delinquency by reason of murder have appealed from the single justice's judgment that allowed the public, and hence the plaintiff's representatives, access to the proceedings involving the five juveniles. We affirm the judgment.

The facts are not in controversy. The five juveniles are charged with delinquency by reason of murder, aggravated rape, and armed robbery alleged to have been committed on October 31, 1990. The Commonwealth, wishing to try the juveniles as adults, moved for a transfer hearing pursuant to G. L. c. 119, § 61. Hearings on nonevidentiary motions were held on December 5 and 20, 1990, and January 9, 1991. On December 20, without objection from the Commonwealth or the juveniles, the judge ruled that changes made by St. 1990, c. 267, concerning juvenile proceedings would not apply to the offenses charged against the five juveniles. The judge excluded the public from the courtroom. A hearing on the motion of one juvenile to suppress a postarrest statement was held on January 25, 1991.

The probable cause portion of the transfer proceeding (often called Part A) was scheduled to commence on February 1. On that date, the plaintiff moved to obtain access to the court proceedings. The judge rejected the plaintiff's argument that the December 4, 1990, amendment to § 65 applied to the proceedings. The plaintiff immediately sought relief from the single justice, who heard the matter forthwith and on that day entered a judgment that granted the plaintiff relief "without prejudice to any party seeking impoundment pursuant to the Uniform Rules on Impoundment Procedure Rules 7 and 8 of the Trial Court Rules." The transfer hearing resumed that afternoon with representatives of the media present. All the juveniles moved for impoundment of the proceedings. The judge suspended the proceedings and, on February 8, held a hearing on the impoundment question. At that time, he noted correctly that the impoundment rules apply to papers, documents, transcripts, and the like and not to in-court testimony. He then entered an order of impoundment of all papers and records in the proceedings. He sus-

pended the transfer hearing until this court has ruled on the juveniles' appeals.[2]

The juveniles argue that the 1990 amendment to G. L. c. 119, § 65, should not be construed to apply to juvenile proceedings based on events that occurred before the amendment became effective. The 1990 act is silent on the question whether the amendment to § 65 applies to future court hearings in juvenile proceedings that are based on alleged preamendment offenses. The general rule is that statutory procedural changes properly apply to pending cases and to trials that concern events occurring before the enactment of the change. See *Commonwealth* v. *Greenberg*, 339 Mass. 557, 578-579 (1959) ("[s]tatutes relating merely to the remedy or procedure which do not affect substantive rights are generally held to operate retroactively"); *Commonwealth* v. *Edgerly*, 13 Mass. App. Ct. 562, 566-567 (1982) (rape shield statute applies to crimes committed before its enactment). Admission of the public to the juvenile proceedings in this case is a procedural change and not a change in the juveniles' substantive rights existing at the time of the alleged offenses.[3] It is certainly arguable that the change in G. L. c. 119, § 61, as appearing in § 3 of St. 1990, c. 267, could not constitutionally be applied to juvenile charges based on preamendment events, because to do so would violate the ban on ex post facto laws.[4] That fact, however, does

---

[2]The Commonwealth has not appealed. We heard the juveniles' appeals expeditiously on March 7, and permitted the Commonwealth to argue. The court heard the appeal, therefore, long before the expiration of the sixty days within which the Commonwealth could have filed a notice of appeal. See Mass. R. A. P. 4 (a), as amended, 395 Mass. 1110 (1985). The Commonwealth's views on the issues in this case are important, and its brief in any event could be considered as that of an amicus curiae. Because nothing turns on it, we treat the Commonwealth as a party to this appeal.

[3]The statutory change does not implicate G. L. c. 4, § 6, Second (1988 ed.), concerning the effect on pending cases of the repeal of a "strictly penal" statute. *Nassar* v. *Commonwealth*, 341 Mass. 584, 588 (1961).

[4]Statute 1990, c. 267, § 3, reverses the usual presumption that a juvenile charged with delinquency should be kept within the juvenile justice system. In this respect, § 3 amended G. L. c. 119, § 61, by providing that, "[i]f a child is charged with murder in the first or second degree, and a

not warrant a parallel view of the consequences of the amendment of § 65 unless the same or some other constitutional provision bars the application of § 65, as amended, to a juvenile hearing on a charge based on preamendment events.

The juveniles argue that, as applied to them, the amendment to § 65 is unconstitutional as an ex post facto law in violation of the Constitution of the Commonwealth (Part I, art. 24) and of the Constitution of the United States (art. 1, § 9). If this amendment purported to increase the punishment that would be imposed on the juveniles beyond that which could have been imposed at the time of the alleged offenses, it would be an ex post facto law. See *Miller* v. *Florida*, 482 U.S. 423, 431-433 (1987); *Calder* v. *Bull*, 3 U.S. (3 Dall.) 386, 390 (1798); *Commonwealth* v. *Phelps*, 210 Mass. 78, 79-81 (1911). The opening of a Juvenile Court proceeding to the public, thereby possibly stigmatizing the juvenile, is not, however, a punishment in a constitutional sense. See *Dobbert* v. *Florida*, 432 U.S. 282, 293-294 (1977) (change in role of jury and judge in determining whether to impose death penalty not ex post facto law), and cases cited; *Commonwealth* v. *Bargeron*, 402 Mass. 589, 591 (1988) (extending statute of limitations for crime already committed not ex post facto law); *Commonwealth* v. *Benjamin*, 358 Mass. 672, 680 (1971) (statutory change not altering substance of crime or permissible punishment not ex post facto law); *Commonwealth* v. *Bellino*, 320 Mass. 635, 641-642, cert. denied, 330 U.S. 832 (1947) (statute providing for use of alternate jurors not ex post facto law). Cf. *Commonwealth* v. *Greenberg*, 339 Mass. 557, 579 (1959) (statute changing rules of evidence not ex post facto law, at least where change was not to defendant's detriment).

The juveniles raise other constitutional challenges to the amendment to § 65 that have nothing to do with the time of

finding of probable cause has been made, there shall exist a rebuttable presumption that the child presents a significant danger to the public and that such child is not amenable to rehabilitation within the juvenile justice system."

the amendment in relation to the time of the alleged offense and thus would apply to any juvenile proceeding charging delinquency by reason of murder. These claims are that, under State and Federal constitutional provisions concerning due process of law and equal protection of the laws, it is a violation of the constitutional rights of a juvenile charged with delinquency by reason of murder to single him out for treatment different from that applicable to juveniles who are charged with delinquency by reason of some crime other than murder. A juvenile does not have a fundamental, due process right to have the public excluded from his transfer hearing. Juveniles charged with murder are not a suspect class for whom a heightened test of the constitutionality of legislation is to be applied, and, therefore, equal protection principles require only that the amendment be "a rational means to serve a legitimate end." See *Cleburne* v. *Cleburne Living Center, Inc.*, 473 U.S. 432, 442 (1985); *Commonwealth* v. *Brasher*, 359 Mass. 550, 558 n.2 (1971).

The Legislature could rationally conclude that the public interest in the proper disposition of a murder charge against a juvenile, the most serious of crimes (perhaps barring treason), warrants opening the courtroom to all proceedings. It is for the Legislature to balance the interests of juveniles and the juvenile justice system against the public's interest in being able to determine, for example, whether a decision to transfer or not to transfer a juvenile to adult jurisdiction was lawfully and soundly made. We grant that publicity might have an adverse effect on the prospects of rehabilitation of a particular juvenile and that the public disclosure of certain information about a juvenile, particularly during the second phase of the transfer proceeding (often called Part B), could have adverse consequences. But that is a question for legislative judgment and is not controlled by due process or equal protection principles. The line drawn between charges of delinquency by reason of murder and delinquency by reason of

other crimes is rational and consistent with apparent and legitimate legislative objectives.[5]

This case does not involve the public's right of access to records of those earlier hearings in these juvenile proceedings that were not open to the public. Nor does this case involve a judge's right to close a courtroom to the public during the consideration of the admissibility of evidence that is claimed to be subject to some statutory or common law privilege. See, e.g., G. L. c. 112, § 135 (1988 ed.) (social worker-client); G. L. c. 233, § 20B (1988 ed.) (psychotherapist-patient). Moreover, certain information presented in a Part B proceeding may involve facts and opinions about others, such as the juvenile's relatives, that, in fairness or in the interests of the juvenile, should be kept confidential. It is difficult in the abstract to decide what a Juvenile Court judge may or may not do in such situations. The presumption is, however, that the

---

[5]The Commonwealth argues that we should exclude the public from Part B hearings involving murder charges. The statute makes no such distinction. Part B proceedings, however, are unique to juvenile proceedings. A juvenile charged with murder, as to whom a judge has found probable cause, may be transferred to the Superior Court to be tried as an adult, only if, after a hearing and in consideration of the rebuttable presumption that such a "child presents a significant danger to the public and that such child is not amenable to rehabilitation within the juvenile justice system," a judge "enters a written finding based upon a preponderance of the evidence that the child presents a significant danger to the public and that the child is not amenable to rehabilitation within the juvenile justice system." G. L. c. 119, § 61 (Supp. 1990).

In the course of a Part B hearing, information detrimental to a juvenile that would not be admissible at a trial may be admitted. See *Commonwealth* v. *Costello*, 392 Mass. 393, 396 n.2 (1984) (poor attendance record at school; juvenile charges of breaking and entering; commitment to Youth Services Board; problems at his foster home); *Commonwealth* v. *Watson*, 388 Mass. 536, 539 (1983) (entire Department of Youth Services file and circumstances of suspension from school). The problem that may arise from pretrial publicity and from any reluctance to present particular evidence in open court might be significant in given cases. That is, however, a matter for the Legislature to consider, and it has done so in making the statutory change.

No claim is made that the Legislature exceeded its authority under art. 30 of the Massachusetts Declaration of Rights (concerning separation of powers) in directing when juvenile sessions should be open or closed. We do not consider this point.

courtroom will be open. *Globe Newspaper Co. v. Commonwealth*, 407 Mass. 879, 883-884 (1990). To the extent that information is presented in written form and the procedures of the trial court's impoundment rule are followed and result in an order of impoundment, we would expect that the statutory requirement of opening juvenile courtrooms to the public when murder charges are involved would not override the exercise of a well-articulated judicial judgment to impound particular records, reports, or documents. Nor would we deny to a judge sitting in a juvenile session the right, on proper findings, to close the courtroom at least in circumstances when it would be closed in a proceeding involving an adult.

*Judgment affirmed.*