Cowin, J.
INTRODUCTION
On November 25, 1996, the plaintiff, John Doe, filed a complaint against the defendants, Attorney General of the Commonwealth, the Criminal Systems History Board, the Massachusetts Department of Youth Services, the District Attorney for Norfolk County, the Chief of Police in the plaintiffs town of residence, and the Clerk for Wrentham District Court for declaratory and injunctive relief. The plaintiff seeks a declaration that: (1) G.L.c. 6, §§178C-1780 is unconstitutional as applied to him under the federal and state constitutions; and (2) the confidentiality provisions of G.L.c. 119, §§53, 60, 60A and 65 remain in force in regard to the plaintiffs adjudication as a juvenile. The plaintiff moves this Court to preliminarily enjoin the defendants from enforcing against him the provisions of G.L.c. 6, §§178C-1780, the Sex Offender Registration, Community Notification Act (the Act), which would require him to register as a sex offender. For the reasons discussed below, the plaintiffs motion for preliminary injunction is DENIED.
BACKGROUND
I. Procedural Background
On April 30, 1993, the plaintiff, then age fifteen, was adjudicated delinquent after pleading delinquent to the crime of rape of a child under the age of sixteen. See G.L.c. 265, §23. As a result of that adjudication, the plaintiff was placed on probation. By entering the negotiated plea, the plaintiff waived a number of his rights including the opportunity for an acquittal should the prosecution fail to produce proof beyond a reasonable doubt. In waiving those rights, the plaintiff relied on the statutes promising confidentiality in juvenile adjudications. See G.L.c. 119, §§53, 60, 60A and 65.[2]
The plaintiff has completed his term of probation and has complied with the order directing him to participate in extensive counseling both of which were imposed as a result of the juvenile adjudication. The plaintiff has not been accused of committing any other offenses either prior to or since his 1993 delinquency proceeding.
Sometime after the enactment of G.L.c. 6, §178C-1780, which occurred on August 5, 1996, the plaintiff was served with notice that an application for a complaint was filed in the Wrentham District Court seek *691 ing to commence a prosecution against him for failure to register as a sex offender pursuant to the Act.[3]
On December 2, 1996, the matter came before this Court on plaintiffs motion for preliminary injunction. The defendants agreed to defer enforcement of G.L.c. 6, §§178A-1780 against the plaintiff pending this Court’s determination of the plaintiffs motion for a preliminary injunction. Following the hearing, the parties were allowed additional time to submit supplemental memoranda.
The juvenile claims that the statute as applied to him is unconstitutional. When he pleaded to the charge, the law provided for the confidentiality of his record. The Legislature has now changed that law to divest the juvenile of that confidentiality protection. The juvenile claims that such a change violates both the ex post facto and double jeopardy protections of the Massachusetts Constitution and the United States Constitution.[4] This claim involves consideration of whether the law is punitive or remedial, as will be discussed below. The juvenile also raises other constitutional challenges to the Act, each of which will be considered.
II. An Act Relative to Sex Offender Registration and Community Notification: G.L.c. 6, §§1780-1780
The Act requires that any sex offender residing in the Commonwealth shall register in person at the police department in the city or town where he resides. The registration data is to include details of the offense and personal information regarding the offender. G.L.c. 6, §178E(h) and §178D.[5] The police department transmits this registration data to the state’s Criminal History Systems Board (the Board) for transmission to “the police departments where the sex offender works and where the offense was committed and to the Federal Bureau of Investigation.” G.L.c. 6, §178E(h).
Offenders must verify the accuracy of the registration data at least once a year. G.L.c. 6, §178F. Any change in residence or in employment must be reported to the police. G.L.c. 6, §178E(e)-(f). The duly to comply with registration requirements continues for twenty years after the date of conviction or release, whichever is later. G.L.c. 6, §178G. If the offender commits a sex offense on more than one occasion, the registration requirement is life-long. Id. Procedures are provided for seeking termination of the registration requirement. Id. Failure to register or to provide required information carries criminal penalties. G.L.c. 6, §178H.
A newly-created Sex Offender Registry Board (Registry Board) will then assess the risk of reoffense of all sex offenders (pursuant to certain guidelines) and assign each offender to one of three levels: if the risk of reoffense is low, a level one designation will be given to the sex offender; if the risk of reoffense is moderate, a level two designation will be assigned; and if the risk of reoffense is high, a level three designation is to be given. G.L.c. 6, §178K(2).
The above classification of sex offenders by risk of reoffense is required for the purpose of notifying the public about sex offenders. The Act provides for three levels of notification which directly correspond to the risk of reoffense level given to the sex offender. The registration data of any sex offender, whether a level one, two or three designation, shall be transmitted by the Board “[t]o the police departments where the sex offender intends to live and work and where the offense was committed and to the Federal Bureau of Investigation.” G.L.c. 6, §178K(2)(a), (b), and (c).
Information regarding a sex offender in any level is to be provided to any person over eighteen who makes an appropriate inquiry. G.L.c. 6, §§1781 and J.[6] In addition to the public disclosure, sex offenders given a level two or level three designation are subject to community notification plans which require that police departments disseminate registration data regarding sex offenders in various ways. G.L.c. 6, §178K(L). There are procedures whereby level two and level three offenders may challenge their “level” designation before the Superior Court. G.L.c. 6, §178M.
Although plaintiff claims that he will be classified as a level three sex offender, he has not yet been classified by the Registry Board. As his classification hinges on the Registry Board’s future decision, the issue of community notification which only applies to sex offenders classified in the level two or level three designation cannot be resolved at this point. If, in fact, there is any constitutional difference that results from a level two or three designation (and I do not decide that there is or is not), it would be premature to adjudicate that issue on this record. Accordingly, the instant decision is limited to the constitutionality of the requirement that the plaintiff register for an offense to which he pled delinquent as a juvenile and the constitutionaliiy of the dissemination of his registration information as a level one offender to qualifying members of the public pursuant to G.L.c. 6, §§1781 and 178J.
III. Opinion of the Justices, 423 Mass. 1201 (1996)
In the Opinion of the Justices, 423 Mass. 1201 (1996), the Supreme Judicial Court considered certain questions related to Senate Bill No. 2276, "An Act relative to sex offender registration, community notification and information access” (the Bill) and concluded that the community notification provisions of the Bill would not violate the ex post facto provisions under Clause I of Section 10 of Article I of the United States Constitution and Article XXIV of the Massachusetts Constitution as applied to a person adjudicated or convicted of a sex offense committed prior to the effective date of the proposed act; that the community notification provisions would not violate the due process rights guaranteed by the Fifth and Fourteenth *692 Amendments of the United States Constitution and Article I of the Massachusetts Constitution of a person who was convicted or adjudicated of committing a sex offense either before or after the effective date of Senate Bill No. 2276 or violate the terms of a plea agreement of a person sentenced for a sex offense after the enactment of Senate Bill No. 2276; that the community notification provisions would not violate the Fourteenth Amendment of the United States Constitution or Article I of the Massachusetts Constitution which guarantee equal protection under the law or violate the protections granted by the Fourteenth Amendment of the United States Constitution against invasion of privacy; and that the community notification provisions would not violate the Eighth Amendment of the United States Constitution prohibiting cruel and unusual punishment or violate double jeopardy principles protected under the Fifth Amendment of the United States Constitution.
Senate Bill No. 2276 differs from the Act that is presently before the Court. Senate Bill No. 2276 differs from the Act in the following relevant aspects: (1) The Act eliminated a section in Senate Bill No. 2276 which provided a rebuttable presumption for juvenile sex offenders. The Bill presumed that the Board would give the juvenile sex offender a level one designation unless the Board found aggravating circumstances which warranted a level two or three designation. (2) The Act eliminated a section regarding telephone inquiries about registered sex offenders. (3) The Act also added Sections 1781 and 178J which provide information about registered sex offenders to qualifying members of the public. (Other differences between the Bill and the Act need not be considered to resolve the issue before this Court.)
Although the Supreme Judicial Court, in deciding the Opinion of the Justices, supra, did not confront issues such as the differences between the Bill and the Act and the constitutionality of the registration provisions, the Court has declared the present Act constitutional to a large degree. For purposes of the present motion, therefore, it is necessary to consider the pertinent aspects of the Act which were not resolved in the Opinion of the Justices, supra. Applying the same criteria previously employed by the Supreme Judicial Court, this Court will address the issues of the constitutionality of: (1) the registration provisions of the Act for juvenile sex offenders; (2) the release of sex offenders’ information to qualifying members of the public pursuant to Sections 1781 and 178J;[7] and (3) the retroactive application of the Act to a juvenile sex offender who pled delinquent before passage of the Act.
DISCUSSION
In determining whether to grant a preliminary injunction, this Court considers the balancing test set forth in Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980). See also Planned Parenthood League of Massachusetts, Inc. v. Operation Rescue, 406 Mass. 701, 710 (1990). This standard requires that, through “an abbreviated presentation of the facts and the law . . . the moving party must show that, without the requested relief, it may suffer a loss of rights that cannot be vindicated should it prevail after a full hearing on the merits.” Packaging Industries Group, Inc., 380 Mass. at 616. The party opposing the injunction may make a similar showing of irremediable harm which would occur were the injunction to issue. Id. In evaluating the motion for a preliminary injunction, the Court must balance the risk of irreparable harm to the plaintiff and the defendant “in light of [each] party’s chance of success on the merits” at trial. Packaging Industries Group, Inc., 380 Mass. at 617. “Only where the balance between these risks cuts in favor of the moving party may a preliminary injunction properly issue.” Id.
In addition to the principles set forth in Packaging Industries, the judge may consider the risk of harm to the public interest. Biotti v. Bd. of Selectmen of Manchester, 25 Mass.App.Ct. 637, 640 (1988); Commonwealth v. Mass. CRINC, 392 Mass. 79, 89 (1984); GTE Products Corporation v. Jefferson Davis Steward, Third, 414 Mass. 721, 723 (1993).[8]
II. Ex Post Facto and Double Jeopardy Challenges
As stated supra, the primary issue before me is whether the application of the Act to this juvenile violates the ex post facto and double jeopardy provisions. The Constitution provides that “[n]o State shall . . . pass any ... ex post facto law.” U.S. Const. art. I, §10. Under the ex post facto clause, the government cannot apply a law retroactively if it “inflicts a greater punishment, than the law annexed to the crime, when committed.” Calder v. Bull, 3 U.S. (3 Dall.) 386, 390 (1798). The Constitution also provides that no person ”[s]hall be subject for the same offense to be twice put in jeopardy of life or limb.” U.S. Const. amend. V. The double jeopardy clause prohibits “a second prosecution for the same offense after conviction . . . and multiple punishments for the same offense.” United States v. Halper, 490 U.S. 435, 440 (1989).
The plaintiffs ex post facto and double jeopardy challenges depend on whether the Act “punishes” level one juvenile sex offenders. Generally, the Legislature may apply a law retroactively that is remedial or regulatory; it may not apply law retroactively that is punitive. Opinion of the Justices, supra at 1220. See Doe v. Weld, No. 96-11968-PBS at 13 (D.Mass. December 17, 1996); Opinion of the Justices, 423 Mass. 1201, 1218 (1996); Artway v. Attorney General of State of N.J., 81 F.3d at 1253.
III. Retroactive Application of the Act
The Act applies retroactively to “[a] person convicted of a sex offense or who has been adjudicated as a youthful offender or as a delinquent juvenile by reason of a sex offense or a person released from incarceration *693 or parole or probation supervision for such a conviction or adjudication, whichever last occurs, on or after August first, nineteen hundred and eighty-one." G.L.c. 6, §178C. The burden imposed by the, Act for sex offenses committed prior to the enactment of the Act may not have been anticipated by the plaintiff at the time he was adjudicated delinquent. However, the law is clear that “[legislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations.” Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 16 (1976) (citations omitted). This is true even if “[t]he effect of the legislation is to impose a new duty or liability based on past acts. There is no bar in principle against rules that effect — sometimes drastically — the situations of persons retroactively. Liability is imposed for acts taken before the statute was written.” Opinion of the Justices, supra, at 1220. See, e.g., Usery v. Turner Elkhorn Mining Co., supra, at 16 (upholding the constitutionality of the retroactive liability imposed on coal mine operators for black lung disease of former employees); United States v. Monsanto Co., 858 F.2d 160, 174 (4th Cir. 1988), cert. denied, 490 U.S. 1106 (1989) (upholding the constitutionality of the retroactive liability for the costs of cleaning up of hazardous waste facilities pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act; Keniston v. Assessors of Boston, 380 Mass. 888, 903-06 (1980) (upholding, in part, the retroactivity of a tax statute).
The retrospective aspects of legislation, however, as well as the prospective aspects, must survive the test for due process validity. Usery, 428 U.S. at 16. In reviewing the retroactive aspect of various laws, courts deem due process satisfied “[b]y showing that the retroactive application is itself justified by a rational legislative purpose.” Pension Benefit Guaranty Corp. v. R.A. Gray & Co., 467 U.S. 717, 729 (1984). Laws which rearrange rights in order to “[ejffect what is believed to be the public good, are described compendiously as regulatory or remedial.” Opinion of the Justices, 423 Mass. at 1220, citing Flemming v. Nestor, 363 U.S. 603, 616-17 (1960) (terminating social security benefits); Harisiades v. Shaughnessy, 342 U.S. 580, 594 (1952) (holding that “[d]eportation, however severe its consequences, has been consistently classified as a civil rather than a criminal procedure”); Commonwealth v. Barboza, 387 Mass 105 (1982) (allowing commitment of sexually dangerous person).
For instance, in United States v. Monsanto, 858 F.2d 160 (4th Cir. 1988), cert. denied, 490 U.S. 1106 (1989), the Court held that the retroactive imposition of strict joint and several liability on owners, operators and generators of hazardous waste for the cleanup costs of a hazardous waste storage facility, pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), satisfies requirements of due process because its liability scheme is rationally related to a valid legislative purpose. Id. at 173-174 (citations omitted). The Court stated that CERCLA acts “[r]emedially to spread the costs of responding to improper waste disposal among all parties that played a role in creating the hazardous waste conditions. Where those conditions are indivisible, joint and several liability is logical, and it works to ensure complete cost recovery.” Id. at 174. The Court concluded that these consequences are not “particularly harsh and oppressive.” Id. quoting United States Trust Co. v. New Jersey, 431 U.S. 1, 17 n.13 (1977). Accordingly, the Court concluded that since CERCLA did not exact punishment, the imposition of strict, joint and several liability did not convert CERCLA into a bill of attainder or an ex post facto law.
Similarly, in Usery v. Turner Elkhorn Mining Co., supra, the United States Supreme Court addressed a due process challenge to the retroactive operation of the liability imposed in the Black Lung Benefits Act of 1972. The Court determined that legislative acts adjusting the burdens and benefits of economic life are presumed to be constitutional and the burden is on the party claiming a due process violation to establish that the legislature has acted arbitrarily and irrationally. Id. at 15. The Court reasoned that even though the Black Lung Benefits Act imposed new liability for disabilities developed prior to its enactment, its operation was “justified as a rational measure to spread the costs of the employees’ disabilities to those who have profited from the fruits of labor.” Id. at 18.
In considering the constitutionality of the retroactive application of the proposed Act, the Supreme Judicial Court noted that laws which are deemed remedial, such as those discussed above, pose no constitutional threats.[9] However, the Court emphasized that because “[Regulation and remedy may sometimes bear as harshly on an individual as criminal punishment ... it is necessary to draw the line between . . laws which are punitive and those that are remedial. Opinion of the Justices, 423 Mass. at 1221. “The infliction of punishment ... is a sine qua non of legislation that runs afoul. ..” of constitutional prohibitions. United States v. Monsanto Co., 858 F.2d at 174.
Therefore, in determining whether the retroactive application of the Act to juveniles presents constitutional roadblocks, this Court must decide whether the statute can be defined as regulatory or penal. In deciding which test to use for making the distinction between penal and regulatory measures, the Supreme Judicial Court, in the Opinion of the Justices, 423 Mass. at 1221-24, reviewed the different approaches chosen by courts across the country. The tests used are “[pjhrased sometimes in terms of the purpose of the particular law, see De Veau v. Braisted, 363 U.S. 144, 160 (1960); Rise v. Oregon, 59 F.3d 1556 (9th Cir. 1995); People v. Adams, 144 Ill.2d 381 (1991), sometimes in terms of its effects, see Artway v. Attorney Gen. of N.J., 81 F.3d 1235, 1263 (3d Cir. 1996); Artway *694 v. Attorney Gen. of N.J., 876 F.Sup. 666, 673 (D.N.J. 1995), and sometimes in terms of the congruency of a law’s regulatoiy goals to its punitive effect. See Doe v. Poritz, 142 N.J. 1, 43-46 (1995).” Opinion of the Justices, 423 Mass. at 1222.
The Supreme Judicial Court concluded that an exclusive focus on either purposes or effects would be unreasonable and impracticable. Id. Accordingly, the Supreme Judicial Court has developed its own test for distinguishing between penal and regulatory measures. The Court stated that it would look:
[n]ot just to [the law’s] stated regulatory purpose, but also its effect on those to whom it is to be applied and on others, and its resemblance to other measures that have firmly been established to count as either regulatory or criminal. The more harshly the measures bear on the individual and the more closely they resemble traditional criminal sanctions, the more urgent must be the regulatory concern, the more soundly rooted in fact rather than prejudice and conjecture must be the basis for that concern, and the more closely we must insist that the proffered regulation must hew to the well-grounded regulatory aim.
Id. at 1223-24.[10]
A. Purpose of the Act
The legislative purpose of the Act is “[t] o assist law enforcement officials in the prevention and investigation of sex crimes and, when necessary, to ‘allow particular members of the public who are in an especially vulnerable situation ... to take measures lawfully available to them to protect themselves against danger.’ ” Doe v. Weld, No. 96-11968-PBS at 19 quoting, Opinion of the Justices, 423 Mass. at 1227, and also citing, H.R. 5949 at §174A(2) (Ma. 1996). The Supreme Judicial Court maintained that “[s]uch a purpose is plainly regulatory in that it seeks to prevent harm." Opinion of the Justices, 423 Mass. at 1227.
I conclude that the inclusion of juveniles in the Act is based upon a nonpunitive desire to protect children and other vulnerable populations from potential harm caused by juvenile, as well as adult, sex offenders.
B. Effect of the Act
The plaintiff states that the devastating impact of the Act on him accomplishes very little in the regulatory area, but threatens enormous punitive effect. Therefore, the plaintiff argues that the Act must be regarded as punishment when applied to him. Although the plaintiff seeks to have this Court address the effect of his being classified as a juvenile sex offender in a level two or level three designation, as previously discussed, this decision is limited to the provisions in the Act which require registration of juvenile sex offenders who have previously pleaded delinquent and dissemination of such level one juvenile sex offenders’ registration information to qualifying members of the public pursuant to G.L.c. 6, §§1781 and 178J.
1. Registration
“Registration is a common and long-standing regulatory technique with a remedial purpose.” Artway v. Attorney General of State of N.J., 81 F.3d at 1264. (Citations omitted.) Almost eveiy court that has considered the question of whether registration constitutes “punishment” has determined that it does not. Doe v. Weld, No. 96-11968-PBS at 20. (Citations omitted.) The registration requirement in Massachusetts is similar to the registration requirement in other states in that a sex offender must, for instance: complete a standardized registration form; notify the police department where he resides of any changes in the registration data; and appear in person at least one time per year at the local police department to verify that the registration data on file remains true and accurate. See G.L.c. 6, §178D. In focusing merely on the act of registration, it seems clear that the “[e]ssentially ministerial action of registration does not restrain or inhibit the sex offender’s activities in any significant way.” Doe v. Pataki, 940 F.Sup. 603, 630 (S.D.N.Y. 1996). See also, Artway v. Attorney General of State of N.J., 81 F.3d at 1267 (holding that the New Jersey statute which provides that the registration data for level one offenders is available only to law enforcement officials, “cannot be said to have an effect so draconian that it constitutes ‘punishment’ in any way approaching incarceration”); Doe v. Weld, No. 96-11968-PBS at 21 (adopting these views on the act of registration under the Massachusetts Act).
The plaintiff argues that since he is required to register because of a juvenile delinquency adjudication, the marginal burden imposed by the registration provisions of the Act is punitive. He states that the Act converts a noncriminal juvenile adjudication, which was once entirely withheld from public view, into a public record.[11]
The Supreme Judicial Court in Opinion of the Justices, supra, has determined notification provisions substantially similar to those in the Act to be constitutional. The Court noted that it was not considering the constitutionality of the registration of sex offenders required by the Bill. Given the fact that the Supreme Judicial Court has deemed the notification provisions constitutional, the burdens imposed by registration provisions would not so affect the juvenile as to render the registration provisions unconstitutional as applied to him. Registration has far less punitive effects on a person than does notification.
Further, this Court agrees with the U.S. District Court which recently addressed a similar issue involving a sex offender who was required to register for a sex offense to which he pled delinquent as a juvenile. The District Court held that the plaintiff was not likely to prevail on the argument that registration constitutes “punishment.” Doe v. Weld, No. 96-11968-PBS *695 at 21 citing, Matter of Appeal of Maricopa County Juvenile Action, 1996 WL 554555, at 3 (Ariz.App.Div. 1996) (refusing to adopt the argument that registration constitutes “punishment” because it “affects juveniles more harshly than it does adults”). In the context of juveniles, the Supreme Judicial Court has recognized that even though the records of a juvenile proceeding in all cases of delinquency were to be withheld from public inspection pursuant to G.L.c. 119, §60A, this statutory protection was not applicable by its terms to police investigations. ”[T]he maintenance of fingerprint, photograph and arrest records serves an important law enforcement function." Id., quoting Commonwealth v. Shipps, 399 Mass. 820, 831-32 (1987) quoting Police Comm’r of Boston v. Municipal Court of Dorchester Dist., 374 Mass. 640, 655 (1978). at 831-32.
It has also been' held that “(n]ot every change in a convicted person’s situation violates the Ex Post Facto Clause." People v. Afrika, 648 N.Y.S.2d 235, 240 (Sup. 1996), quoting Rise v. Oregon, 59 F.3d 1556 (9th Cir. 1995). Numerous cases have sustained the imposition of new disabilities on persons previously convicted of crimes when the legislation’s overall purpose is non-punitive. See, for example, De Veau v. Braisted, 363 U.S. 144 (1960) (convicted felons prohibited from collecting union dues); U.S. v. Huss, 7 F.3d 1444 (9th Cir. 1993) (restricting felons from carrying firearms); Hawker v. New York, 170 U.S. 189 (1898) (convicted felons disqualified from practicing medicine); People v. Doe, 169 Misc. 2d 29, 642 N.Y.S.2d 996 (Nassau County Court 1996) (HIV testing of felons convicted of certain sex crimes). These cases hold that statutes altering the expectations of people previously convicted are nevertheless constitutional. There may be a difference in degree between the impact of the new legislation in the above cases and the impact of the registration and notification provisions in the present case. However, tile difference is not significant for constitutional purposes.
Accordingly, the registration requirement and use of this information by law enforcement officials is not so punitive in form and effect as to constitute “punishment.” Therefore, I find the plaintiff has not established a likelihood of success on his ex post facto and double jeopardy challenges to the registration provisions of the Act.
2. Public Access to a Level One Juvenile Sex Offender’s Registration Data
The Opinion of the Justices, supra, did not consider the constitutionality of §§1781 and 178J concerning the public availability of a level one juvenile sex offender’s registration data.[12] The issue of whether the availability of this information constitutes “punishment” presents a more difficult question than the constitutionality of the registration provisions. The plaintiff argues that the impact of the release of his registration information is so predictable and severe that it must be deemed “punishment.” The plaintiff maintains that he will be branded a sex offender and as a result, he will experience embarrassment, humiliation and even ostracism. In addition, the plaintiff asserts that his family will suffer and his economic prospects will be dimmed. However, after weighing the purpose for releasing this information with the effect it will have on the plaintiff, I conclude that it is unlikely that the public disclosure scheme applicable to level one juvenile sex offenders will be found to be so punitive in form and effect that it will be considered penal rather than remedial. The Legislature’s choice to subject registration data of level one offenders to public availability is not beyond the Legislature’s power; it falls within the legislative power in the interest of protecting the public. Since it is remedial, it may be applied retroactively.
It might be argued that the release of registration data for level one juvenile sex offenders “[i]mpose[s] no requirement at all on sexual offenders, but only regulates] communications between public officials and certain members of the public — communications about matters that in any event are or, as an incident to the prior adjudication of guilt, may be made part of the public record available to all.” Opinion of the Justices, 423 Mass. at 1226.[13] The plaintiff argues that the release of this information because of an offense to which he pled delinquent as a juvenile is more likely to constitute “punishment” than if he were an adult sex offender. Confidentiality is the cornerstone of the juvenile system. However, as discussed infra, although the confidentiality of the plaintiffs court records were important to him when he pled delinquent as a juvenile, he cannot rely in perpetuity upon statutes in effect at the time of his plea. There is no constitutional right to receive preferred treatment as a juvenile offender. Commonwealth v. Wayne W., 414 Mass. 218, 222 (1993). The inclusion of juvenile sex offenders in the Act supports the legislative purpose of protecting the public from all sex offenders, including juvenile sex offenders.
Moreover, the regulatory purpose of public access to the registration data of level one offenders is evident from the detailed information required of inquiring members of the public. Only those persons who verify their identity and age of majority and who sign a record of inquiry stating that the information is for their personal protection or the protection of a child in their care or custody are privy to the registration information. See G.L.c. 6, §§1781 and 178J(a).[14] Since the Act only allows “ [particular members of the public who are in an especially vulnerable situation (or responsible for the care of persons, like children, who are in an especially vulnerable situation) to take measures lawfully available to them to protect themselves against danger,” its purpose is “[plainly regulatory in that it seeks to prevent harm.” Opinion of the Justices, 423 Mass. at 1227.
*696 The Act recognizes the potential for some members of the community to misuse the acquired registration data and, therefore, requires that all members of the public who receive this information be warned of the criminal penalties for the use of sex offender registry information to commit a crime or to engage in illegal discrimination or harassment of an offender. See G.L.c. 6, §§1781 and 178J. In addition, the Act appears to take a restrictive approach to the distribution of registration data by giving only “(v]ulnerable members of the public . . . just enough information to allow them to take precautions against potential sex crimes .... See []G.L.c. 6, §178J(b) (providing that only the offender’s name, home and work address, offense, personal characteristics and photo shall be released).” Doe v. Weld, No. 96-11968-PBS at 24.
The release of registration data for level one offenders ”[i]s rationally connected to the salutary purpose of permitting vulnerable community members to protect themselves from low risk sexual offenders, and the statutory approach appears to be among the least restrictive means of achieving this legislative goal...” Id. at 26-27. Although the disclosure of registration data may impact the plaintiff, who pled delinquent to a sex offense with the understanding that this type of information would remain confidential, more than adults whose criminal acts were always a matter of public record, the “(m]inimal [l]evel [o]ne public disclosure does not carry such a ‘sting’ that it should be deemed ‘punishment.’ ” Id. at 27 quoting, W.P. v. Poritz, 931 F.Sup. 1199, 1218 (D.N.J. 1996). Further, the lifting of the juvenile privacy protection does not necessarily trigger unconstitutionally punitive activity. See News Group Boston, Inc. v. Commonwealth, 409 Mass. 627 (1991), in which the Supreme Judicial Court, in permitting access to juvenile court proceedings in a murder case stated: “Opening of a Juvenile Court proceeding to the public, thereby possibly stigmatizing the juvenile, is not ... a punishment in a constitutional sense.” Id. at 631.
In view of the above analysis, I have concluded that the Act is not likely to be considered penal as applied to level one juvenile sex offenders. Accordingly, the plaintiff is unlikely to prevail on his claim that the registration and public availability of the registration data for level one juvenile sex offenders violates the ex post facto and double jeopardy clauses.
IV.Cruel and Unusual Punishment Challenge
The plaintiff argues that, on its face and as applied to him, the Act violates the Eighth Amendment to the United States Constitution prohibiting cruel and unusual punishment. Since I have determined that the Act is unlikely to be deemed “punishment” as it applies to level one juvenile sex offenders, the plaintiff has not shown a likelihood of success on his cruel and unusual punishment claim. The “[SJupreme Court’s precedents make clear that the prohibition against cruel and unusual punishment applies only to punishments. It does not apply to equally burdensome regulatory measures that may be characterized as cruel and even unusual.” Opinion of the Justices, 423 Mass. at 1238 (citations omitted). Accordingly, “(h)owever harsh a measure may be — however much in popular parlance it may be said to be cruel and unusual — the prohibition of the Eighth Amendment only comes into play if the measure may properly be counted as a punishment.” Id.
V.Equal Protection Challenges
The plaintiff argues that the Act imposes burdens on his right to privacy and right to travel unequally in regard to the general population or in regard to those adjudicated delinquent. While the plaintiff acknowledges the Supreme Judicial Court’s strong skepticism concerning the existence of a right to privacy in criminal adjudications, he maintains that different considerations govern the application of the Act to a plaintiff whose only record was created in a juvenile proceeding, subject to explicit statutory guarantees of confidentiality. The plaintiff asserts that the chilling effect on these fundamental rights requires the application of a “strict scrutiny" standard of review. However, the plaintiff states that even if this standard is not applied, the Commonwealth must demonstrate that there is a rational basis for imposing the devastating burdens of public stigma on the plaintiff.
Since ”|j]uvenile sex offenders are not in a suspect or quasi-suspect class and fundamental rights are not implicated, the legislature need only have a rational basis for distinguishing them from other juveniles in order to survive the equal protection challenge.” Doe v. Weld, No. 96-11968-PBS at 28 quoting, Beauchamp v. Murphy, 37 F.3d 700, 707 (1st Cir. 1991), cert. denied, 115 S.Ct. 1365 (1995); Cameron v. Walsh, 1996 WL 461502, *5 [sic] (D.Mass. 1996). Itisunlikely that the plaintiff will succeed on his equal protection claim because there appears to be a rational basis for treating juvenile sex offenders differently from other juvenile offenders. “[T]he legislature determined that sex offenders pose a higher danger of recidivism than other offenders, and that disparate treatment is needed to promote public safety.” Id. (Citation omitted.)
VI.Procedural Due Process Challenges
The plaintiff argues that the Act deprives him of a liberty interest in the privacy of his juvenile adjudication without any notice or an opportunity to be heard on the issue. Although Massachusetts has historically protected juveniles by keeping the juvenile system confidential, this protection does not stem from any constitutional mandate and thus may be removed by the Legislature. Therefore, as previously discussed, plaintiff has not shown a likelihood of success on a constitutional ground for not applying the Act to juvenile sex offenders.
It is necessary to consider whether the Act violates a level one sex offender’s right to due process because *697 it does not permit a level one offender to be heard on his classification level. See. G.L.c. 6, §178K(3) (the registry board’s designation of an offender as level one “shall be final and there shall be no judicial review of its decision”). Compare G.L.c. 6, §178M (allowing an offender who has been given a level two or level three designation to petition the Superior Court to challenge said designation). Since the statute provides the right of review only for purposes of challenging one’s designation, there is no sense to have a right of review for level one offenders. Level one offenders cannot be given a lower level designation.
Accordingly, since appellate review is limited to the designation of risk level and this Court assumes for the purpose of this motion that the plaintiff is a level one offender, a hearing for him as a level one sex offender would serve no purpose. Since the offender must register and one cannot receive a risk designation lower than level one, there is nothing for judicial review. Doe v. Weld, No. 96-11968-PBS at 29.[15] There-fore, it is unlikely that the plaintiff will succeed on his procedural due process challenges.
VII. Whether the Application of the Act is in Violation of the Plaintiffs Negotiated Juvenile Plea
As previously discussed, at fifteen years of age, the plaintiff pled delinquent to the crime of rape of a child under the age of sixteen. By entering the negotiated plea, the plaintiff surrendered his opportunity to secure an acquittal should the prosecution have failed to produce proof beyond a reasonable doubt. In agreeing to waive his trial rights, the plaintiff relied on the statutes and practices promising confidentiality in juvenile adjudications. See G.L.c. 119, §§53, 60, 60A and 65. The plaintiff argues that the confidentiality provisions of the juvenile justice system in effect at the time of his negotiated plea and juvenile adjudication must be specifically enforced and therefore, the Act, which is in direct contradiction to the confidentiality bargained for, cannot be enforced against him.
Since the registration requirement and the release of level one sex offenders’ registration data pursuant to G.L.c. 6, §§1781 and 178J are considered remedial rather than punitive as they relate to juveniles, I find it also likely that these provisions affecting the plaintiff will be deemed collateral to the plaintiffs plea agreement.
The Supreme Judicial Court briefly addressed the effect of community notification on plea agreements in its decision Opinion of the Justices, 423 Mass. 1201, 1231 (1996) (responding to one of the questions posed by the Senate regarding Senate Bill No. 2276: whether the community notification provisions would violate the terms of a plea agreement of a person sentenced for a sex offense after the enactment of the proposed legislation). The Supreme Judicial Court concluded that “(t]he notification provisions are ‘but one of the many contingent consequences of being confined.’ ’’ Id. at 1231 quoting, Commonwealth v. Morrow, 363 Mass. 601, 606 (1973) (concerning plea agreement made by defendant without knowledge that pleas could subject him to the operation of G.L.c. 123A (Sexually Dangerous Persons Statute). Moreover, the Supreme Judicial Court stated that it would “(n]ot determine it constitutionally required to inform a defendant that his guilty plea might subject him to notification, and any failure to inform would not violate the terms of a plea agreement.” Id. citing, Morrow, 363 Mass. at 606. See also, Doe v. Weld, No. 96-11968-PBS at 32, which states that an individual
[ejntering the guilty plea without knowledge of the potential for registration and community notification does not render his plea involuntary and, thus, does not violate the Constitution. See United States v. Campusano, 9d, F.2d 1, 5 (1st Cir. 1991) (holding that “the prosecution is only obligated to advise defendants of the direct consequences of a guilly plea”); Cameron v. Walsh, 1996 WL 461502, *3-*4 (D.Mass. 1996) (finding commitment under Massachusetts’!] Sexually Dangerous Persons Act is a ’’collateral, contingent consequence" and that failure to inform defendant did not make plea constitutionally infirm); see also, Cuthrell v. Director, Patuxent Inst., 475 F.2d 1364, 1366 (4th Cir. 1973) (rejecting contention that the failure to inform a juvenile delinquent that his guilty plea might result in civil commitment did not invalidate plea or commitment).[16]
The above cases articulate the rule that must be followed for a plea to be valid: the defendant must be aware of all the direct consequences of his plea; he need not be advised of all the collateral consequences of the plea. The distinction turns upon whether the consequence represents a definite, immediate and largely automatic effect on the range of a defendant’s punishment. Since the registration requirements and the release of level one sex offender registration data is remedial rather than punitive, these provisions affecting the plaintiff are deemed collateral to his plea agreement.
Although the confidentiality of the plaintiffs court records were important to him when he pled delinquent as a juvenile, there is no constitutional right to have the public excluded from juvenile court proceedings, News Group Boston, Inc. v. Commonwealth, 409 Mass. 627, 631 (1991), or to receive any other preferred treatment as a juvenile offender. Commonwealth v. Wayne W., 414 Mass. 218, 222 (1993). By passing the Act, the Legislature has permissibly changed the law and may apply it retroactively.
As previously discussed, I find a likelihood of success on the defendants’ assertion that the registration requirement and the release of information for level one juvenile sex offenders serves a legitimate regulatory purpose. The same criteria which convinced the Supreme Judicial Court that the statute in general was remedial apply here to defeat the juvenile’s claim. If the legislation is regulatory, it may be applied retro *698 actively, notwithstanding the state of the law at the time of the plea bargain. Accordingly, the regulatory purpose of the Act validates the present consequences inflicted on the plaintiff for a crime committed prior to the enactment of the Act.
ORDER
For the foregoing reasons, it is hereby ORDERED that John Doe’s motion for a preliminary injunction is DENIED.

 The statute regarding the confidentiality of juvenile records has recently been amended. See H.B. No. 5876, c. 200, §6 (July 27, 1996) amending G.L.c. 119, §60A. At the time of the plaintiffs plea, G.L.c. 119, §60A stated:
The records of the court, including those of a juvenile appeals session, in all cases of delinquency arising under Sections fifty-two to fifty-nine, inclusive, shall be withheld from public inspection except with the consent of a justice of such court, but such records in any such case against any particular child shall be open, at all reasonable times, to the inspection of the child, his parent or parents, guardian and attorney, or any of them.
Notwithstanding the provisions of this section, the name of a child shall be made available to the public by the probation officer without such consent if the child is: alleged to have committed an offense while between his fourteenth and seventeenth birthdays; and has previously been adjudicated delinquent on at least two occasions for acts which would have been punishable by imprisonment in the state prison if such child had been age seventeen or older; and is charged with delinquency by reason of an act which would be punishable by imprisonment in the state prison if such child were age seventeen or older.

 A sex offender who knowingly fails to register or verify registration data as required shall, upon a first conviction, be punished “by imprisonment for not more than two and one-half years in a house of correction’’ and/or “by a fine of not more than one thousand dollars." G.L.c. 6, §178H.

 As the Supreme Judicial Court noted in Opinion of the Justices, 423 Mass. 1201 (1996), “[t]he Constitution of the Commonwealth has no explicit double jeopardy protection, although we have always afforded such protection as a matter of our common law. See Luk v. Commonwealth, 421 Mass. 415, 416 n.3 (1995). To the extent that protection is only a matter of the common law of the State and not perhaps implicated in our Constitution’s guarantee of due process, it might of course be overridden by explicit legislative enactment. The point is, however, only of theoretical concern, since we have always construed the common law protection to be coextensive with that of the Federal Constitution." Id. at 1218 n. 13.

 General laws c. 6, §178C defines a “sex offender” as “a person convicted of a sex offense or who has been adjudicated as a youthful offender or as a delinquent juvenile by reason of a sex offense or a person released from incarceration or parole or probation supervision for such a conviction or adjudication, whichever last occurs, on or after August first, nineteen hundred and eighty-one." General laws c. 6, §178C includes within the definition of “sex offense” the crime of rape and abuse of a child under the provisions of G.L.c. 265, §23.

 See n.15 infra (explaining the relationship between G.L.c. 6, §§1781 and 178J).

 The elimination of the section regarding telephone inquiries is no moment to this opinion. The elimination of a section that grants public access cannot be detrimental to the plaintiff.

 In the present case, the interests of the government and of the public are synonymous.

 Although the laws cited above, such as CERCLA, deal with monetary liability for past activity rather than the loss of confidentiality regarding past activity, the two types of loss do not differ for constitutional purposes. Since the changes imposed by the Act did not constitute punishment, see infra, the Act is remedial and may be applied retroactively.

 The Court placed great emphasis on the United States Supreme Court’s recent statement regarding the distinction between laws that are punitive or remedial in the double jeopardy context: “if ‘the statutory scheme [is] so punitive either in purpose or effect as to negate [the Legislature’s] intention to establish a civil remedial mechanism,’ it is a punitive statute.” Id. at 1223 quoting, United States v. Usery, 64 U.S.L.W. 4565, 4568 (June 25, 1996).

 As previously stated, the Board will transmit registration data for level one offenders to the police departments where the sex offender intends to live and work and where the offense was committed and to the Federal Bureau of Investigation. See G.L.c. 6, §178K(2)(a). Moreover, the registration data is available to qualifying members of the public pursuant to G.L.c. 6, §§1781 and 178J. For a discussion on the issue of whether the release of a level one juvenile offender’s information to the public constitutes “punishment,” see the following section.

 As discussed supra, these provisions were not contained in the Bill considered in the Opinion of the Justices, supra.

 Although the Supreme Judicial Court was reviewing the constitutionality of the community notification provisions in §174B of Senate Bill No. 2276 when making this statement, the concept can be applied to the release of registration information pursuant to G.L.c. 6, §§1781 and 178J.

 The relationship between G.L.c. 6, §§1781 and 178J is unclear. At least one Superior Court decision has interpreted §1781 and §178J of the Act to establish two separate avenues for an adult to attain registration data. See, Doe v. Attorney General, Nos. 96-1349 and 96-1450 (Hampden Super. Ct. November 19, 1996). However, I adopt the interpretation of the District Court in Doe v. Weld, No. 96-11968-PBS, which reads the two provisions in tandem: §1781 describes generally the report that the Board must produce and §178J sets forth the procedure for receiving the requested registration information. The District Court reasons that since the statutoiy text as a whole suggests that the dissemination of information to the public is triggered by the signing of a “record of inquiry” in the manner set forth in §178J, therefore a person who requests sex offender registration data from either the Board or the police must follow the specific procedures set forth by the legislature in G.L.c. 6, §178J. Id. at 24 n.6. Moreover, G.L.c. 6, §178K(2)(a) states that “[t]he public shall have access to information regarding a level one offender in accordance with the provisions of Sections one hundred and seventy-eight I and one hundred and seventy-eight J.” (Emphasis added.) It appears that the Act specifically requires inquiring members of the public to comply with both §1781 and §178J prior to the release of registration information for level one offenders.

 Since this opinion is limited to the level one juvenile sex offender, the adequacy of the due process protections available to level two and level three sex offenders are not addressed.

 It is noted that these cases did not decide questions of retroactivity. They did, however, determine that laws that alter rights, sometimes severely, may nevertheless be regulatory or remedial.